*698 TEXTO COMPLETO DE LA SENTENCIA
El 19 de enero de 1999, Overseas Insurance Agency, Inc. (en adelante Overseas) compareció ante nos mediante Petición de Certiorari y solicitó que este Tribunal dejara sin efecto la Resolución emitida el 9 de noviembre de 1998 y notificada el 18 de diciembre de 1998 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante dicha resolución, el tribunal de instancia denegó la desestimación solicitada por Overseas en la demanda sobre daños y perjuicios contra ella presentada por el Sr. Manuel Hidalgo (en adelante Hidalgo) y ordenó la continuación de los procedimientos. Por los fundamentos que expondremos, EXPEDIMOS el auto solicitado y CONFIRMAMOS la resolución recurrida.
I
El 12 de julio de 1993, Hidalgo presentó Querella por discrimen por razón de edad en el empleo ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos (en adelante Unidad Antidiscrimen). En dicha querella, Hidalgo alegó que Overseas tenía la intención de despedirlo de su empleo efectivo el 1 de septiembre de 1993 porque él no quería acoger el plan de retiro de la compañía. Además, Hidalgo alegó que dicha acción constituia discrimen por razón de edad conforme las disposiciones del “Age Discrimination in Employment Act", 29 U.S.C. Secciones 621, et seq, (en adelante ADEA) y de la Ley Número 100 del 30 de junio de 1959, 29 L.P.R.A. Secciones 146, et seq, (en adelante Ley 100). Hidalgo optó por no acoger el plan de retiro de Overseas y el 1 de septiembre de 1993, Overseas lo despidió. Overseas alegó que dicho despido fue el resultado de una decisión de negocios tomada por la empresa de cerrar la división que Hidalgo dirigía.
El 30 de diciembre de 1993, la Unidad Antidiscrimen emitió el “right to sue letter”. Una vez recibida dicha carta, Hidalgo presentó demanda ante el Tribunal Federal para el Distrito de Puerto Rico bajo las disposiciones de ADEA, supra. Además, Hidalgo incluyó en dicha demanda una causa de acción bajo las disposiciones de la Ley 100, supra. No obstante, el 20 de junio de 1996, el Tribunal Federal para el Distrito de Puerto Rico desestimó la causa de acción bajo ADEA, supra, y desestimó, sin perjuicio, la causa de acción bajo la Ley 100, supra.
Así las cosas, el 16 de junio de 1997, Hidalgo presentó demanda sobre daños y.perjuicios ante el Tribunal dé Primera Instancia, Sala Superior de Bayamón. En la misma, Hidalgo alegó que Overseas lo despidió de su *699 empleo efectivo el 1 de septiembre de 1993 porque él no quiso acoger el plan de retiro de la compañía aunque ya era elegible para dicho plan en la referida fecha. También, Hidalgo alegó que Overseas discriminó en su contra por razón de edad, que su despido fue sin justa causa y que dicha acción contravenía las disposiciones de la Ley 100, supra. Por consiguiente, Hidalgo solicitó que el tribunal de instancia declarara con lugar la demanda y condenara a Overseas a reponer a Hidalgo en su empleo con la correspondiente promoción, con el pago retroactivo desde el día en que fue privado de la promoción hasta el día de su reposición en el empleo y con los beneficios marginales que él tenía derecho a recibir durante ese período. Además, Hidalgo solicitó que Overseas lo compensara por todos los sufrimientos causados.
El 4 de febrero de 1998, Overseas presentó moción de desestimación y alegó que la sentencia emitida por el Tribunal Federal para el Distrito de Puerto Rico en el caso Hidalgo v. Overseas Insurance Agencies, Inc., 929 F. Supp 555 (1996), y la sentencia emitida por Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito en el caso Hidalgo v. Overseas Insurance Agencies, Inc., 120 F. 3d 328 (1997), respectivamente, constituían impedimento colateral por sentencia en cuanto a las alegaciones de Hidalgo, ya que, en ambas sentencias, los tribunales federales concluyeron que el despido de Hidalgo no estuvo motivado por razones de discrimen por edad. Por tal razón, como la demanda no exponía una reclamación que justificara la concesión de un remedio a favor de Hidalgo, Overseas solicitó que el tribunal de instancia desestimara la misma.
El 17 de febrero de 1998, Hidalgo solicitó al tribunal de instancia una prórroga de 30 días para presentar su oposición a la desestimación solicitada por Overseas. Nuevamente, el 13 de abril de 1998, Hidalgo solicitó que el tribunal de instancia concediera una prórroga para presentar su oposición a la desestimación solicitada por Overseas. Luego de evaluar ambas solicitudes, el 23 de abril de 1998, notificada el 16 de junio de 1998, el tribunal de instancia emitió resolución y denegó las prórrogas solicitadas por Hidalgo.
Sin embargo, antes de que el tribunal de instancia notificara la resolución del 23 de abril de 1998, el 24 de abril de 1998, Hidalgo presentó su oposición a la desestimación solicitada por Overseas. En dicha oposición, Hidalgo alegó que la doctrina de impedimento colateral por sentencia no impedía que el tribunal de instancia dilucidara la causa de acción instada contra Overseas.
El 12 de mayo de 1998, Overseas replicó la oposición presentada por Hidalgo y alegó que dicha oposición era extremadamente tardía y que no exponía ninguna fuente jurídica que sustentara la argumentación de que un cambio en el peso de la prueba, según las disposiciones de la Ley 100, supra, impedía la aplicación de la doctrina de cosa juzgada. Por lo tanto, Overseas solicitó que el tribunal de instancia declarara no ha lugar la oposición presentada por Hidalgo. Finalmente, el 21 de mayo de 1998, Hidalgo presentó oposición a la réplica de Overseas y solicitó que el tribunal de instancia declarara sin lugar tanto la moción de desestimación como la réplica presentada por Overseas.
El 9 de noviembre de 1998, notificada el 18 de diciembre de 1998, el tribunal de instancia emitió Resolución, declaró sin lugar la moción de desestimación presentada por Overseas y ordenó la continuación de los procedimientos. El tribunal de instancia resolvió que no procedía el aplicar la doctrina de impedimento colateral por sentencia, ya que la sentencia sumaria emitida por el Tribunal Federal para el Distrito de Puerto Rico, la cual fue confirmada por el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, no impedía que Hidalgo elevara su causa de acción ante un tribunal estatal por los mismos hechos al amparo de la Ley 100, supra, porque el Tribunal Federal para el Distrito de Puerto Rico había desestimado sin perjuicio la causa de acción bajo la Ley 100, supra.
No conforme, el 19 de enero de 1999, Overseas acudió ante nos mediante Petición de Certiorari y alegó *700 que el tribunal de instancia erró al no aplicar la doctrina de impedimento colateral por sentencia, ya que, tanto el Tribunal Federal para el Distrito de Puerto Rico, así como el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito habían resuelto que la terminación del empleo de Hidalgo respondió a una decisión de negocios legítima tomada por Overseas y que la misma no estuvo motivada por consideraciones discriminatorias. Por tal razón, Overseas solicitó que este Tribunal dejara sin efecto la resolución recurrida, aplicara la doctrina de impedimento colateral por sentencia y, en consecuencia, desestimara la demanda al ésta no aducir una reclamación que justificara la concesión de un remedio a favor de Hidalgo.
El 29 de enero de 1999, Hidalgo solicitó prórroga de 20 días para presentar su oposición a la petición de certiorari. Finalmente, el 5 de febrero de 1999, Hidalgo presentó su oposición a la petición de certiorari y alegó que el error señalado por Overseas era totalmente inmeritorio, ya que las sentencias emitidas por los tribunales federales no tenían el efecto de una adjudicación en los méritos del litigio. Por consiguiente, Hidalgo solicitó que este Tribunal declarara no ha lugar la petición de certiorari y ordenara que las partes continuaran con los procedimientos de rigor.
Al estar perfeccionado el Recurso ante nos, procedemos a resolver.
II
Cuando los tribunales federales asumen jurisdicción en un caso bajo una causa de acción federal, éstos pueden -según la doctrina de pendent jurisdiction o jurisdicción accesoria- adjudicar reclamaciones relacionadas sobre las cuales, de ordinario, no tendrían jurisdicción para adjudicarlas, Ramos González v. Félix Medina, 121 D.P.R. 312, 333 (1988); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117 (1984).
Conforme dicha doctrina, para que un tribunal federal asuma jurisdicción accesoria sobre una causa de acción estatal, es necesario que la causa de acción federal que fundamenta la acción presentada sea suficientemente sustancial como para conferirle jurisdicción sobre la materia. Esa sustancialidad es determinada a base de las alegaciones, independientemente de la disposición ulterior del caso. Si la reclamación federal es sustancial, el tribunal puede considerar todas las reclamaciones, estatales o federales, que surjan del mismo núcleo común de hechos operacionales —common nucleus of operative facts— siempre que pudiera ser esperado que el demandante las litigara todas en un sólo procedimiento judicial, Ramos González v. Félix Medina, supra, página 333; Díaz Maldonado v. Lacot, 123 D.P.R. 261, 273 (1989); 13 B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters (Federal Question Jurisdiction — Diversity Jurisdiction), 2da ed., Sección 3567.1, páginas 114-116 (1984).
Aun cuando el demandante no solicite al tribunal federal que asuma jurisdicción accesoria sobre la reclamación estatal, la sentencia que en su día emita el tribunal federal tendría el efecto de cosa juzgada sobre ésta debido a que el demandante podía haberle hecho la referida solicitud al tribunal federal y no lo hizo. Tanto bajo las normas federales, así como bajo las normas estatales, no sólo las cuestiones litigadas y adjudicadas son consideradas cosa juzgada, sino también aquellas que pudieron haber sido litigadas y adjudicadas con propiedad aun cuando no fueren planteadas. No obstante, si el demandante solicita al tribunal federal el ejercicio de su jurisdicción accesoria y dicho tribunal decide no entender en la reclamación estatal, la sentencia federal no constituiría cosa juzgada sobre el reclamo estatal, Ramos González v. Félix Medina, supra, páginas 333-334; Díaz Maldonado v. Lacot, supra, página 274; Wright, Miller & Cooper, supra, Volumen 18, Sección 4412, páginas 95-97; 3A Moore's Federal Practice, Sección 18.07 (1.4), página 1864 (1987).
III
La doctrina de cosa juzgada, res judicata pro veritate habetur, opera en Puerto Rico en virtud de lo *701 dispuesto en el Artículo 1204 del Código Civil, 31 L.P.R.A. Sección 3343. En lo pertinente, dicho artículo señala:

“Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.

Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. ”

En Worldwide Food Distributors, Inc. v. Colón Bermúdez, _ D.P.R. _ (1993), 93 J.T.S. 114, página 10966, el Tribunal Supremo expresó lo siguiente en relación con la doctrina de cosa juzgada:
“Por cosa juzgada se entiende lo ya resuelto por fallo firme de un juez o tribunal competente y lleva en sí la firmeza de su irrevocabilidad. Indica también el respeto debido a lo fallado y la autoridad que lo resolvió... el fundamento de la cosa juzgada no está en una pretensión de infalibilidad en el juzgador, ni menos en el intento de ocultar sus errores, sino que se encuentra en la esencia misma de la resolución judicial, que no merecería tal nombre ni tendría fuerza y resultado, si no se fortaleciera de ese modo, ” Manresa, Comentarios al Código Civil Español, Tomo VIII, Volumen 2, Madrid, ed. 1967, páginas 278-279.
Dicha doctrina persigue el propósito de proteger a los litigantes de las molestias que supone litigar en repetidas ocasiones la misma controversia, promover la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes. En definitiva, pretende dar la debida dignidad a las actuaciones de los tribunales, Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 218-219 (1992); Pagan Hernández v. U.P.R., 107 D.P.R. 720, 732 (1978).
El efecto de la doctrina de cosa juzgada es evitar que en un pleito posterior sean litigadas cuestiones que ya fueron o que pudieron haber sido litigadas y adjudicadas en un pleito anterior, Worldwide Food Distributors, Inc. v. Colón Bermúdez, supra, página 10966; Rodríguez Rodríguez v. Colberg Comas, supra, página 219; Pagán Hernández v. U.P.R., supra, páginas 732-733. De este modo, la aplicación de la doctrina de cosa juzgada presupone que entre el pleito ya resuelto, y aquél en el que es planteada dicha doctrina, acontezca identidad de cosas, causas, litigantes y calidad en que lo fueron. Worldwide Food Distributors, Inc. v. Colón Bermúdez, supra, página 10966.
A tenor con la doctrina de cosa juzgada, en A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 758-761 (1981), el Tribunal Supremo evaluó la doctrina del impedimento colateral por sentencia. El impedimento colateral por sentencia es una modalidad de la defensa de cosa juzgada que consiste en alegar que un hecho esencial, o unos hechos esenciales, para el pronunciamiento de una sentencia, ya ha sido adjudicado definitivamente en un primer litigio entre las partes, Pereira v. Hernández, 83 D.P.R. 160, 166 (1961); Santiago v. Western Digital Caribe, Inc., _ D.P.R. _ (1996), 96 J.T.S. 42, página 880; Fatach v. Seguros Triple S, Inc., _ D.P.R. _ (1999), 99 J.T.S. 46, página 807. A su vez, el impedimento colateral por sentencia tiene dos modalidades: (a) defensiva, y (b) ofensiva. La modalidad defensiva es una defensa que el demandado plantea para impedir la litigación de un asunto ya planteado y perdido por el demandante en pleito anterior frente a otra parte. La modalidad ofensiva es una defensa que el demandante plantea para impedir que el demandado vuelva a litigar aquellos asuntos previamente litigados y perdidos frente a otra parte.
En el caso de autos, estamos ante la modalidad defensiva de impedimento colateral por sentencia. Overseas fue quien invocó dicha doctrina para impedir que Hidalgo volviera a litigar en el tribunal de instancia su causa *702 de acción bajo la Ley 100, supra. Además, Overseas invocó el impedimento colateral por sentencia en su modalidad defensiva para solicitar que el tribunal de instancia desestimara la causa de acción instada por Hidalgo, ya que los tribunales federales habían resuelto que el despido de Hidalgo no había sido discriminatorio.
No obstante, luego de examinar la jurisprudencia interpretativa de la doctrina de cosa juzgada y de la doctrina del impedimento colateral por sentencia, concluimos que el tribunal de instancia no abusó de su discreción al resolver que el impedimento colateral por sentencia no era de aplicación en el presente caso. Si bien es cierto que el tribunal federal desestimó mediante sentencia sumaria la causa de acción de Hidalgo al amparo de las disposiciones de ADEA, supra, también es cierto que el tribunal federal desestimó sin perjuicio la causa de acción de Hidalgo al amparo de las disposiciones de la Ley 100, supra. El tribunal federal declinó ejercer su jurisdicción accesoria sobre la causa de acción bajo la Ley 100, supra. Al ser ello así, la desestimación sin perjuicio de dicha causa de acción no constituye una adjudicación en sus méritos. Por consiguiente, concurrimos con la determinación del tribunal de instancia a los efectos de que lo resuelto por el tribunal federal no impide que los hechos del caso sean relitigados bajo las disposiciones de la Ley 100, supra, a los fines de adjudicar si procede o no la reclamación de Hidalgo.
IV
En virtud de los fundamentos que anteceden, EXPEDIMOS el auto solicitado y CONFIRMAMOS la Resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General